AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

2019 AUG -6 PM 2: 26

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )       Case No. 3:19mj445
CELLULAR TELEPHONE ASSIGNED )
CALL NUMBER (937) 270-3285 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A - This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 / 846 | distribution of controlled substance / conspiracy to distribute controlled substance |
| 21 USC 843(b) | use of a communication facility, in facilitating the commission of any act or acts |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.
☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA LAUREN WAGNER, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/6/19

City and state: DAYTON, OHIO

_____
*Judge's signature*

Hon. Michael J. Newman, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF CELLULAR TELEPHONE ASSIGNED CALL NUMBER (937) 270-3285 | Case No. 3:19 mj 445 <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Lauren Wagner being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number:

    a. (937) 270-3285, registerd to TRACFONE with an address of 8390 N.W. 25th Street., Miami, Florida, 33122 (hereinafter "**Target Telephone**"). The **Target Telephone**'s service provider is AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, Suite 600, North Palm Beach, Florida, 33408. The **Target Telephone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I, Lauren Wagner, am a Special Agent with the United States Drug Enforcement Administration (DEA), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878. The information contained in this Affidavit is either personally known by me or relayed to me by other law enforcement officers involved in this investigation.

3. Your Affiant has been employed as a Special Agent by the United States Department of Justice, DEA, since September 2017, and is currently assigned to the DEA Detroit Division Dayton Resident Office, Group D-46. Prior to your Affiant's employment with the DEA, your Affiant served as a Criminal Investigator for the New York State Department of Taxation and Finance Criminal Investigations Division, Cigarette Strike Force from September 2013 to August 2017 wherein your Affiant has investigated financial crimes to include; money laundering, structuring habits, and cash smuggling. Your Affiant has interviewed numerous subjects/defendants involved in and/or arrested for tax and drug violations and has participated in several joint interagency federal and state investigations. In September 2017, your Affiant reported to DEA Basic Agent Training in Quantico, Virginia. In January 2018, your Affiant completed the 19 week Basic Agent Training Academy at the DEA Justice Training Center in Quantico, Virginia. While attending Basic Agent Training, your Affiant received instruction on topics including narcotics identification, surveillance techniques, methods of operation of narcotics traffickers, law, evidence handling, undercover operations, current trends/patterns involving the distribution of narcotics, as well as other areas of drug enforcement.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 846 and 841; and 21 U.S.C. § 843(b) have been committed, are being committed, and will be committed by Crawford BOGLE and others known and unknown to Affiant. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and

will lead to the identification of individuals who are engaged in the commission of these offenses.

## FACTS ESTABLISHING PROBABLE CAUSE

5. This investigation is currently targeting a Drug Trafficking Organization (herein after referred to as "DTO") that collects, transports, and distributes bulk United States Currency (hereafter referred to as "USC") that represent the proceeds of drug trafficking activity. As detailed more fully below, I am aware that Crawford BOGLE ("BOGLE") serves an integral role in this DTO and distributes bulk amounts of fentanyl and methamphetamine on its behalf in the Dayton, Ohio area.

6. BOGLE has a history of drug trafficking activity. During in or around October 2013, he pleaded guilty to a federal drug charge in the United States District Court for Southern District of Ohio and ultimately received a 70 month term of imprisonment in that case. During the investigation of that matter, law enforcement recovered quantities of cocaine, crack cocaine, and marijuana. BOGLE has additional contacts with the criminal justice system, including: burglary, bribery, menacing, possession of drugs, possession of cocaine, permitting drug abuse, and possession of drug paraphernalia.

7. I know that, during fall 2018, the Dayton Police Department used an informant to purchase small quantities of narcotics from BOGLE. Around this same time, I received information from a DEA Confidential Source ("CS1") that BOGLE was back on the streets of Dayton trafficking in narcotics after being released from federal prison. CS1 has relayed actionable and credible intelligence for the past approximate two years that has led to multiple arrests and seizures. Given this circumstance, CS1 is deemed to be reliable and credible.

8. In April 2019, I learned that BOGLE was still on federal supervised release. Around that time, law enforcement was involved in a money pick up of suspected drug proceeds from BOGLE. During this incident, law enforcement saw BOGLE meet with Dayton Police Detective who was working in an undercover capacity (UC). BOGLE placed a plastic bag into a trash can for the UC; when recovered, the bag was found to contain approximately $30,000.00 in suspected drug proceeds. After the meeting, law enforcement followed BOGLE and watched as he drove to 4492 Riverside Drive, Dayton, OH, parked in the attached lot, and entered with a key into the building. Members of the Dayton RO corroborated this observation with prior DPD surveillances wherein it was determined that BOGLE utilizes apartment B1 within the aforementioned address.

9. On May 22, 2019, members of the Dayton RO conducted mobile surveillance of BOGLE wherein BOGLE drove from 4492 Riverside Drive, Dayton, OH to the Cincinnati Airport. At this time, members of the Dayton RO secured a search warrant for 4492 Riverside Drive, Dayton, OH. As a result of the execution of this search warrant, a total of approximately 1,061 grams of suspected fentanyl and approximately 2,390 grams of suspected methamphetamine were recovered from that location.

10. On or about July 29, 2019, the Honorable Walter H. Rice, United States District Court Judge, authorized the interception of wire and electronic communications over BOGLE's phone – namely (937) 610-8200. Pursuant to that order, law enforcement has intercepted BOGLE on that phone since on or about July 30, 2019. Since the start of interception, law enforcement has monitored several calls involving suspected drug trafficking activity. For instance, on or about August 1, 2019, at approximately 2:36 p.m., BOGLE used (937) 610-8200 to contact the **Target Telephone**, and DEA intercepted the ensuing conversation between these

numbers. DEA believes the **Target Telphone** is used by an individual identified as Dorian BAILEY ("BAILEY") based on information obtained from the Dayton Police Department, and based on voice comparisons from known jails of BAILEY. During the call, the user of the **Target Telephone** and BOGLE engaged in following telephone conversation concerning a drug transaction. In particular:

| | | |
|---|---|---|
| BOGLE: | [ASIDE: You don't see my shirt over there?] | |
| BAILEY: | Hello? | |
| BOGLE: | Hey, bruh', where you at? | |
| BAILEY: | Uh, on the west side [U/I]. | |
| BOGLE: | Hey, can you meet my nigga right here um at the alley and Mayfair | |
| BAILEY: | What's up? | |
| BOGLE: | He got uh, he want a quarter of that, of that ice. | |
| BAILEY: | I don't have no quarter, gotta take it. I gotta go get it, I ain't got nuttin' on me. | |
| BOGLE: | I need you to get it for me, bruh', so I can, tell him, whatchu' want me to tell him? What [U/I]? | |
| | [VOICES OVERLAP] | |
| BAILEY: | Tell, tell him twenty (20) minutes. | |
| BOGLE: | Okay. | |
| | [VOICES OVERLAP] | |
| BAILEY: | I'm… | |
| BOGLE: | Yeah. | |
| | End of call | |

11. Based on my training and experience, I believe that in this conversation BOGLE requested that BAILEY deliver "ice" to an unknown individual on BOGLE's behalf in the vicinity of Mayfair Road, Dayton, Ohio. I know, based on training and experience and the

5

experience of other agents involved in this investigation, that the term, "ice" is a coded term for methamphetamine used by drug traffickers. In the aforementioned call, it is unclear as to the specific quanitity "a quarter" was referring to. Based on the conversation above, I believe that BAILEY did not posses the requested quantity of methamphetamine and therefore BOGLE instructed BAILEY to go pick it up from an undisclosed location. I believe, at the conclusion of the conversation, BAILEY agreed to complete the drug transaction for BOGLE.

12. On August 4, 2019, at approximately 8:52 p.m., in the following transcripted communication, BOGLE, using (937) 610-8200, received an incoming call from the **Target Telephone**. The following conversation ensued:

| | |
|---|---|
| BOGLE: | Hello? |
| BAILEY: | Yeah, I'm comin' down Siebenthaler [PH], I'm real close on Main Street. |
| BOGLE: | Get that whatchamacallit it's in there. But you have to come in the garage door, that lil' scalp, lil' gutter. |
| BAILEY: | Yeah |
| BOGLE: | There's a [U/I] right there. Just look up under there and you'll see two (2) lil' pieces of dog wrapped in the bags, just take that 'til I get up. |
| BAILEY: | A' ight, I'm gonna go up right now. |

End of call

13. Based on my training and experience, I believe that in this conversation BAILEY is in need of drugs and BOGLE instructs BAILEY to go to his (BOGLE's) garage. I believe BOGLE tells BAILEY to go in the garage and retrieve two concealed, undetermined amounts of narcotics wrapped in bags. Your Affiant knows, based on training and experience and the experience of other agents involved in this investigation, the term "dog" is a coded term for heroin used by drug traffickers.

6

14. A search of law enforcement indices for BAILEY's criminal history revealed an assortment of narcotics charges to include, but not limited to, possession of marijuana and possession of cocaine.

15. Based on my training and experience, I know that individuals involved in the drug trade frequently utilize fictitious names and/or do not provide a real name and address for the phone subscriber information in an attempt mask their identity from law enforcement. Here, the **Target Telephone** is subscribed to TRACFONE with an address of 8390 N.W. 25th Street., Miami, Florida, 33122. I believe the location of the phone will assist agents in revealing the role played by the user of **Target Telephone** in drug trafficking activity, aid law enforcement determine the scope and members of BOGLE's DTO, and aid law enforcement in revealing locations where drugs or drug proceeds are stored.

16. Based on my training and experience, I know that AT&T can collect cell-site data about the **Target Telephone**. AT&T can also collect E-911 Phase II data about the location of the **Target Telephone**, including by initiating a signal to determine the location of the **Target Telephone** on AT&T's network or with such other reference points as may be reasonably available. I know that this location information will assist law enforcement in identify the user of the **Target Telephone**. Additionally, the location information may also lead law enforcement to locations at which the user of the **Target Telephone** is storing or selling illegal drugs. Additionally, this information will assist law enforcement observe potential meetings between the user of the **Target Telephone** and other individuals with whom he is trafficking narcotics, *i.e.*, coconspirators.

## AUTHORIZATION REQUEST

17. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

18. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Telephone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. Moreover, to the extent that the warrant authorizes the seizure of any tangible property, any wire or electronic communication (as defined in 18 U.S.C. § 2510), or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.

19. I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the **Target Telephone** on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

20. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Telephone** outside of daytime hours.

21. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Lauren Wagner, Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on August 6, 2019.

_____
HONORABLE MICHAEL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (937) 270-3285, registerd to TRACFONE with an address of 9390 N.W. 25th Street, Miami, Florida, 33122 ("**Target Telephone**"), whose service provider is AT&T, 11760 U.S. Highway 1, Suite 600 North Pam Beach, Florida, 33408.

2. Information about the location of the **Target Telephone** that is within the possession, custody, or control of AT&T.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of **Target Telephone** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of **Target Telephone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the **Target Telephone** on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

To the extent that the Location Information includes tangible property, wire or electronic communications (as defined in 18 U.S.C. § 2510), or stored wire or electronic information, there is reasonable necessity for the seizure. *See* 18 U.S.C. § 3103a(b)(2).